UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| GEORGE SACKO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TPG SABIN HOTEL, LLC d/b/a | ) |
| RESIDENCE INN BY MARRIOT | ) |
| PROVIDENCE DOWNTOWN, | ) |
| JOHNATHAN MERRIOTT, CITY OF | ) |
| PROVIDENCE, by and through its | ) |
| Treasurer Shomari Husband, | ) |
| OFFICER KAYLA FACEY, OFFICER | ) |
| FLAVIO TAVARES, OFFICER | ) |
| ALEXANDER WAGONER, and JOHN | ) |
| DOES 1-5, | ) |
| | ) |
| Defendants. | ) |
| | ) |

C.A. No. 25-cv-496-MSM-AEM

**MEMORANDUM AND ORDER**

Mary S. McElroy, United States District Judge.

Before the Court are the Motions to Dismiss of the defendant City of Providence's ("the City") (ECF No. 25) and of three defendant Providence Police officers: Kayla Facey, Flavio Tavares, and Alexander Wagoner (collectively "the Officers") (ECF No. 31). For the following reasons, the Court GRANTS both Motions to Dismiss.

## I.    BACKGROUND

The plaintiff, George Sacko, brings this civil rights action against the following defendants: (1) TPG 100 Sabin Hotel, LLC d/b/a Residence Inn by Marriot Providence

Downtown ("the Hotel"); (2) hotel employee Johnathan Merriott; (3) the City; (4) the Officers; and (5) John Does 1-5.[1]  (ECF No. 3 ¶¶ 7-14.)  Specifically, Mr. Sacko—a Black man—alleges that the Hotel, by and through Mr. Merriott, discriminated against him and violated his civil rights after Mr. Merriott allegedly questioned his status as a guest at the Hotel and, following his failure to verify Mr. Sacko as a guest, contacted the Providence Police Department to effectuate his removal from the premises.  *Id.* ¶¶ 1-3.  Mr. Sacko also brings this action against the Officers for their allegedly unlawful arrest of him and the City for its role in failing to prevent his allegedly unlawful interaction with the Officers.  *Id.* ¶¶ 85-93.

With respect to the incident itself, Mr. Sacko alleges that, on September 29, 2024, he arrived at the Hotel following a prior, month-long stay; checked in at the front desk; and proceeded to the area of the Hotel to eat the complimentary breakfast it offers to hotel guests.  *Id.* ¶¶ 17-23.  During his meal, Mr. Sacko alleges that Mr. Merriott approached him, questioned him about his status as a guest, and requested that he leave the premises after Mr. Sacko refused to identify himself.  *Id.*  Mr. Sacko also alleges that Mr. Merriott "rudely" questioned him and "used racially derogatory language" during their exchange.  *Id.*

Following his refusal to leave the premises, Mr. Sacko alleges that Mr. Merriott contacted the Providence Police Department.  *Id.* ¶ 23.  Upon the Officers' arrival, Mr. Sacko began to film them while they spoke with Mr. Merriott and continued to

---

[1] Mr. Sacko alleges that John Does 1-5 constitute unidentified "employees or agents of the Providence Police Department."  (ECF No. 3 ¶ 14.)

2

do so while the Officers questioned him about his status as a guest. *Id.* ¶¶ 24-26. Although Mr. Sacko initially informed the Officers that the front desk had his name, he nevertheless refused to provide them with his identity. *Id.* ¶¶ 24-30. Mr. Sacko's refusal ultimately led Mr. Merriott to request a no trespass order, which prompted his arrest. *Id.* ¶¶ 24-30.

After the Officers searched Mr. Sacko incident to his arrest and placed him in Officer Facey's police cruiser, they discovered a hotel room key in his possession. *Id.* ¶¶ 33-35. Once more, the Officers asked Mr. Sacko to identify himself so that they could verify his status as a hotel guest and assured him that, if he did so, "no arrest would be made." *Id.* Upon Mr. Sacko's refusal, the Officers transported him to the Providence Detention Center where he was held for twelve hours. *Id.* ¶¶ 36-37. During this period, Mr. Sacko alleges he was handcuffed for an excessive length of time and that he urinated on himself before his eventual release. *Id.* ¶ 38. While Mr. Sacko received a Notice to Appear informing him of a pending obstruction charge, the State ultimately dismissed the charge after his arraignment. *Id.* ¶ 40.

Both the Hotel and Mr. Merriott have answered Mr. Sacko's Amended Complaint. (ECF Nos. 34, 35.) The Officers have moved to dismiss all counts against them and the City seeks dismissal only of Mr. Sacko's claim for municipal liability. (ECF Nos. 25, 31.)

## II.    MOTION TO DISMISS STANDARD

The First Circuit has outlined the framework for evaluating a motion to dismiss in the following manner: "Step one: isolate and ignore statements in the

complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements . . . Step two: take the complaint's well-plead (*i.e.* non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).

## III.  DISCUSSION

The Officers move to dismiss Mr. Sacko's constitutional and state-law claims against them, arguing that the Amended Complaint lacks factual allegations showing they acted with racial animus or lacked probable cause to arrest Mr. Sacko for refusing to identify himself.  (ECF No. 31-1 at 4-10.)  The City separately moves to dismiss on the ground that the Amended Complaint contains no allegation supporting municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  (ECF No. 25-1 at 3-7.)

With respect to claims brought pursuant to 42 U.S.C. § 1983, "[a] claim under § 1983 has two 'essential elements': [1] the defendant must have acted under color of state law, and [2] his or her conduct must have deprived the plaintiff of [his or her] rights secured by the Constitution or by federal law." *Gagliardi v. Sullivan*, 513 F.3d 301, 306 (1st Cir. 2008).  Additionally, the Rhode Island Civil Rights Act, R. I. Gen. Laws § 42-112-2 authorizes litigants to bring a civil action and serves as the state law analogue to Title VII of the Civil Rights Act of 1964.  *Deangelis v. Hasbro, Inc.*, 165 F.4th 646, 651 n.2 (1st Cir. 2026).  Finally, "[a]n underlying constitutional tort is required to proceed under a municipal liability theory.  Where there is no

4

constitutional violation by the employees of the municipality, there can be no liability predicated on municipal policy or custom." *Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484, 504 (1st Cir. 2011) (cleaned up).

Here, both the Officers and the City have successfully demonstrated their entitlement to dismissal. As explained in greater detail below, Mr. Sacko's Amended Complaint fails to contain non-conclusory allegations that would support his claims against either the Officers or the City. This Court will address each alleged constitutional violation in turn.

## A. Fourth Amendment Violation

Mr. Sacko's Amended Complaint alleges that the Officers violated the Fourth Amendment by detaining him without proper justification, escalating his detention without probable cause to suspect that he committed a crime, and improperly relying on his refusal to speak to them as a basis for detaining him. (ECF No. 3 ¶¶ 24-42, 71-72.) Notwithstanding these allegations, Mr. Sacko's Amended Complaint lacks specific, plausible factual allegations demonstrating that the Officers acted in an unlawful manner. Moreover, Mr. Sacko's factual allegations directly contradict the idea that the Officers lacked probable cause to arrest; instead, they support the conclusion that the Officers validly arrested him in line with the Constitution's requirements.

Mr. Sacko alleges that the Officers did not ask him to verify either his identity or his status as a guest at the hotel until after Mr. Merriott contacted the Providence Police and informed them that Mr. Sacko refused to verify his identity with Mr.

Merriott. *Id.* ¶¶ 20-23. Once the Officers received the report that Mr. Sacko was potentially an unauthorized guest and he refused to identify himself upon their request for his identification, the Officers almost certainly possessed probable cause to suspect that — at a minimum — Mr. Sacko had obstructed the Officers and violated R.I. Gen. Laws § 11-32-1.[2] *See Acosta v. Ames Dep't Stores, Inc.*, 386 F.3d 5, 9 (1st Cir. 2004) ("Probable cause for an arrest exists when the arresting officer, acting upon apparently trustworthy information, reasonably concludes that a crime has been (or is about to be) committed and that the putative arrestee likely is one of the perpetrators."). Because the Officers possessed probable cause to arrest Mr. Sacko for obstruction, his Fourth Amendment claim fails.

Mr. Sacko's own Amended Complaint undermines his probable cause argument. His allegations describing his refusal to cooperate with both Mr. Merriott and the Officers (ECF No. 3 ¶¶ 20-23), accepted as true, establish that the Officers had probable cause to conclude he was not lawfully present at the Hotel. Accordingly, Mr. Sacko has failed to state a Fourth Amendment claim.[3]

---

[2] R.I. Gen. Laws § 11-32-1 provides the following:

> Every person who shall obstruct any officer, civil, military, or otherwise, including any state, city, or town police, deputy sheriff, or fire fighter, while in the execution of his or her office or duty, shall be imprisoned not exceeding one year or be fined not exceeding five hundred dollars ($500).

G.L. 1956 § 11-32-1.

[3] While the Officers possessed probable cause to arrest Mr. Sacko for violating R.I. Gen. Laws § 11-32-1, the Amended Complaint's allegations also likely permit the Court to determine that they possessed probable cause to arrest him for violating

## B.  Fourteenth Amendment Violation

The Officers have also demonstrated that Mr. Sacko has failed to plausibly allege a violation of his Fourteenth Amendment rights, which appears from the Amended Complaint to be an alleged violation of the Equal Protection Clause.  Such a claim requires a plaintiff to allege that "(1) [he], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious bad faith intent to injure [him]." *Freeman v. Town of Hudson*, 714 F.3d 29, 38 (1st Cir. 2013).

Here, Mr. Sacko has failed to meet his burden.  Mr. Sacko only alleges that, as a Black man, the Officers "discriminated against him and profiled him based on his race" and his opposition merely restates this same legal conclusion.  (ECF No. 3 ¶ 75); (ECF No. 36-1 at 8.)   This allegation serves as a canonical example of a legal conclusion that the Court must disregard.  *Schatz*, 669 F.3d at 55.  Even though Mr. Sacko asks this Court elsewhere to review the "totality" of his Amended Complaint, the Amended Complaint lacks any allegation explaining how the Officers singled him out based on his race or that the Officers treated similarly situated guests at the hotel in a manner different from Mr. Sacko himself.  (ECF No. 28 at 4-9.)   Based on Mr.

---

additional offenses such as trespass and larceny.  Nevertheless, the Court's resolution of these issues would not alter the ultimate determination of the Officers' or the City's motions.  As a result, the Court refrains from evaluating the viability of these alternative bases for the Officers to have obtained probable cause to arrest Mr. Sacko.

Sacko's failure to plausibly allege that the Officers denied him his equal protection rights, the Court concludes that it must dismiss this claim as well.

## C. Rhode Island Civil Rights Act Violation

Similarly, the Officers have demonstrated that Mr. Sacko failed to plausibly allege that they have violated the Rhode Island Civil Rights Act. As with Mr. Sacko's Fourteenth Amendment claim, the Amended Complaint contains no allegations supporting the notion that the Officers treated him in a selective manner based on his race. While the Amended Complaint contains a single, conclusory allegation stating that the Officers' discovery of his room key denied him the contractual benefits and privileges enjoyed by "non-Black citizens," (ECF No. 3 ¶ 95), Mr. Sacko's Amended Complaint does not allege that the Officers engaged in any form of disparate treatment prior to, during, or after his arrest. *See generally id.*

## D. First Amendment Violation

Finally, the Court concludes that the Officers have demonstrated that Mr. Sacko has failed to plausibly allege that they violated his First Amendment rights. Litigants bringing section 1983 claims alleging that the government has engaged in retaliatory prosecution for First Amendment activity must prove that their conduct was: (1) constitutionally protected; (2) a substantial or motivating factor for the retaliatory decision; and (3) that probable cause did not exist for the resulting criminal charge. *See Gericke v. Begin*, 753 F.3d 1, 6 (1st Cir. 2014). While Mr. Sacko alleged that he "filmed the interaction with the Providence Police officers on his cell phone" and that the Officers "unreasonably prolonged and intensified" his arrest and

"retaliate[d] against his exercise of his right to film their conduct during their investigatory stop[,]" the Amended Complaint contains no allegations that would create any nexus between Mr. Sacko's decision to film the Officers and his resulting arrest. (ECF No. 3 ¶¶ 26, 80.) To the contrary, a fair reading of Mr. Sacko's factual allegations reveals one reason behind the Officers' decision to arrest him: Mr. Sacko's failure to provide his identity so that the Officers and Mr. Merriott could verify his status as a guest. Even when viewed in the light most favorable to him, Mr. Sacko's decision to film the Officers bears no discernable relation to any actions that the Officer took during their exchange with him.

Moreover, Mr. Sacko's allegation that the Officers "prolonged and intensified" his arrest based on his decision to film them is severely undercut by his contradictory allegation stating that Officer Wagoner offered to release Mr. Sacko if he provided them with his name. *See id.* ¶ 35 ("Upon the discovery of Mr. Sacko's room key, Officer Wagoner approached Mr. Sacko while he was detained in Defendant Officer Facey's police cruiser and once again asked Mr. Sacko to provide his name to issue the No Trespass order and stated that 'no arrest would be made' if he provided his identity."). The Court therefore concludes that Mr. Sacko has failed to plausibly allege that the Officers violated his First Amendment rights.[4] Finally, based on the

---

[4] Mr. Sacko also alleges that the Officers violated what he describes as his "First Amendment right to speak" by retaliating against him based on a disagreement about whether he could *remain* silent after the Officers asked him to identify himself. (ECF No. 3 ¶¶ 78-80.) It is unclear whether Mr. Sacko attempts to allege that the Officers ostensibly violated his *Fifth* Amendment right to silence or if he instead seeks relief pursuant to a different theory altogether. In any event, Mr. Sacko has failed to present these allegations in a manner that can withstand dismissal. *See United*

lack of any remaining claims against the Officers, the Court concludes that it must also dismiss Mr. Sacko's claims against John Does 1-5.

### E.  The City's Motion to Dismiss

Based on Mr. Sacko's failure to allege any cognizable wrongdoing on behalf of the Officers, his claim for municipal liability on behalf of the City necessarily fails. *See Leavitt*, 645 F.3d at 504 ("An underlying constitutional tort is required to proceed under a municipal liability theory.  Where, as here, there is no constitutional violation by the employees of the municipality, there can be no liability predicated on municipal policy or custom.") (citation omitted).  As a result, the Court dismisses Mr. Sacko's municipal liability claim against the City.

Notwithstanding the Court's dismissal of Mr. Sacko's claim against the City, the Court wishes to emphasize that Mr. Sacko's state law negligence claim remains pending against the City along with his claims against the Hotel and Mr. Merriott. To be sure, the Court's decision on these motions to dismiss should not be understood as its endorsement of the manner in which either the Hotel or the City handled the circumstances that allegedly transpired in this matter.  Nevertheless, the Court determines that Mr. Sacko has failed to allege that either the City or the Officers have violated his constitutional rights.

---

*States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

## IV.    CONCLUSION

Based on the foregoing, the Court GRANTS the City's Motion to Dismiss (ECF No. 25) and the Officers' Motion to Dismiss (ECF No. 31).

IT IS SO ORDERED.

Mary S. McElroy
United States District Judge

July 7, 2026

11